[734 NYS2d 671]

Nathan Littauer Hospital Association et al., Respondents, v Eliot L. Spitzer, as Attorney General of the State of New York, Appellant.

Third Department, December 20, 2001

## APPEARANCES OF COUNSEL

*Eliot Spitzer, Attorney General,* New York City (*William Josephson* of counsel), for appellant.

*Harris Beach L. L. P.,* Rochester (*Paul R. Braunsdorf* of counsel), for Nathan Littauer Hospital Association, respondent.

*Tobin & Dempf,* Albany (*Michael L. Costello* of counsel), for St. Mary's Hospital at Amsterdam, respondent.

*Arnold & Porter,* New York City (*Genevieve R. Bishop* of counsel), for Save Our Services-Gloversville and others, amici curiae.

*O'Connell & Aronowitz,* Albany (*Jeffrey J. Sherin* of counsel), for Healthcare Trustees of New York State, amicus curiae.

*Wilson, Elser, Moskowitz, Edelman & Dicker L. L. P.,* Albany (*Darrell E. Jeffers* of counsel), for Healthcare Association of New York State and others, amici curiae.

## OPINION OF THE COURT

CREW III, J.

Plaintiffs, Nathan Littauer Hospital Association and St. Mary's Hospital at Amsterdam, are not-for-profit hospitals located in the City of Gloversville, Fulton County, and the City of Amsterdam, Montgomery County, respectively. Colonial Healthcare Corporation, a not-for-profit corporation, is the sole member of Littauer, and Carondelet Health Systems, Inc., also a not-for-profit corporation, is a corporate member of St. Mary's. Plaintiffs seek to affiliate under a newly created common parent corporation, Tri-County Health System (hereinafter TCH).

To that end, on or about February 26, 1999, Littauer, St. Mary's, Colonial and Carondelet entered into a "Definitive Agreement," pursuant to the terms of which TCH would become the sole member of each plaintiff. Colonial and Carondelet, in turn, would be the only two members of TCH. As the sole corporate member of Littauer and St. Mary's, TCH would assume certain statutory powers under the N-PCL including, *inter alia,* the power to appoint and/or remove directors and approve amendments to the respective certificates of incorpora-

tion and bylaws. The proposed affiliation would be accomplished by plaintiffs each filing a restated certificate of incorporation which, in turn, would amend their respective certificates of incorporation to reserve to TCH certain governance and management powers.

During public review of the subject transaction, defendant determined that the proposed affiliation required Littauer to file a petition with Supreme Court pursuant to N-PCL 510 and 511, with notice to defendant. Defendant also took the position that plaintiffs were required to seek court approval of their restated certificates of incorporation in accordance with N-PCL 804 and 805. Plaintiffs disagreed and commenced this declaratory judgment action seeking a declaration that the proposed affiliation does not require Supreme Court's approval pursuant to the cited provisions of the N-PCL. Following joinder of issue, plaintiffs moved for summary judgment and defendant cross-moved for similar relief. Supreme Court granted plaintiffs' motion and denied defendant's cross motion, prompting this appeal.

A Type B not-for-profit corporation is required to obtain the approval of a Justice of the Supreme Court of the judicial district in which the office of the corporation is located, upon 10-days' written notice to defendant, prior to filing an amendment to its certificate of incorporation if such amendment "seeks to change or eliminate a purpose or power enumerated in the corporation's certificate of incorporation, or to add a power or purpose not enumerated therein" (N-PCL 804 [a] [ii]). This approval process also applies to a restatement of a certificate of incorporation if such document includes an amendment to the powers or purposes enumerated in the corporation's certificate of incorporation (see, N-PCL 805 [d]).

Initially, a review of Littauer's current and restated certificates of incorporation reveals that there has been no change to Littauer's underlying corporate purpose. As set forth in the current certificate of incorporation, Littauer's mission is to "erect, establish, maintain and operate a hospital, infirmary or home for the reception, care, maintenance, giving of medical and surgical advice, aid and treatment to persons afflicted with maladies, or physical injuries, or physical weaknesses or infirmities." This statement is repeated verbatim in the restated certificate of incorporation, and careful examination of that document discloses no change to Littauer's overall business purpose. We reach a similar conclusion as to the current and restated certificates of incorporation of St. Mary's.

With regard to whether Littauer's restated certificate of incorporation "seeks to change or eliminate a * * * power enumerated in the corporation's certificate of incorporation, or to add a power * * * not enumerated therein" (N-PCL 804 [a] [ii]), defendant's argument is two-fold. First, seizing upon the word "enumerated," defendant argues that merely reciting the powers to be vested in TCH as Littauer's sole member, which appear to be nothing more than the general and special powers conferred upon all not-for-profit corporations under N-PCL 202 (a), constitutes an addition of corporate powers because Littauer's current certificate of incorporation does not "enumerate" any powers whatsoever. In our view, defendant's interpretation of N-PCL 804 (a) (ii) is both strained and overly simplistic. Plainly, the statute is designed to require prior court approval only in instances where the proposed amendment truly seeks to change the nature, object or powers of a particular corporation. Under the restated certificate of incorporation at issue here, TCH, as Littauer's sole member, would derive no fewer or greater powers than those currently possessed by Littauer. Indeed, the sole difference between the current and restated certificates of incorporation relative to the issue of corporate powers is that the former is silent on that point while the latter delineates such in painstaking detail. In our view, the mere act of delineating powers already validly possessed by a particular corporation does not constitute an "addition" of corporate powers, thereby triggering the review and approval procedures mandated by N-PCL 804 (a) (ii). Nor are we persuaded that the reservation of the enumerated powers contained in Littauer's restated certificate of incorporation to TCH, as Littauer's sole member, constitutes a change in, elimination of or addition to corporate powers warranting judicial intervention and approval.

We reach a similar conclusion with regard to defendant's argument that there has been a "change" in certain of the powers enumerated in the current certificate of incorporation of St. Mary's. Pursuant to paragraph 7 (e) of the restated certificate of incorporation, TCH, as the sole corporate member of St. Mary's, would possess the power to "approve * * * the entry by [St. Mary's] into a contract to manage all or part of any other entity, or to be managed, in whole or in part, by any other entity" and, pursuant to paragraph 7 (h), the power to "approve the sale, lease, pledge, mortgage or other disposition of any assets of [St. Mary's]" under certain specified circumstances. Although the foregoing provisions indeed con-

stitute a restatement of corporate powers utilizing language somewhat different than that appearing in the current certificate of incorporation of St. Mary's, the general and specific powers enumerated therein have not been altered. And, as was the case with Littauer's restated certificate of incorporation, we are not persuaded that the reservation of enumerated powers contained in the restated certificate of incorporation of St. Mary's to TCH constitutes a change in, elimination of or addition to corporate powers such that judicial approval is required.

In addition to addressing the arguments advanced by defendant as to the need for compliance with the provisions of N-PCL 804 (a) (ii), we need to consider the contentions of Save Our Services-Gloversville, Planned Parenthood Mohawk-Hudson, Inc., Family Planning Advocates of New York State and Citizen Action of New York as amici curiae in this matter. Littauer's restated certificate of incorporation contains a provision directing that "the provision by [Littauer] of a service which was not offered by [Littauer] as of the day before [TCH] became the sole corporate member of both [Littauer and St. Mary's] be in conformance with the Ethical and Religious Directives for Catholic Health Care Services." The restated certificate of incorporation contains a similar provision requiring that the discontinuance of a service provided by Littauer be in compliance with the aforementioned directives. Because such provisions admittedly affect the ability of Littauer to provide abortion-related services and potentially impact upon Littauer's ability to offer, *inter alia*, contraception services and counseling, amici curiae argue that such provisions constitute a change in corporate powers and, as such, review and approval under N-PCL 804 (a) (ii) is mandated.

Although mindful of the perhaps subtle distinction that exists between a corporation's powers and purposes and the services that it actually provides, we nonetheless are not persuaded that the cited provisions in Littauer's restated certificate of incorporation constitute a curtailment of corporate power. To be sure, under the general and special powers available to all not-for-profit corporations under N-PCL 202 (a), Littauer previously was vested with the power to decide, in an exercise of its business judgment, which services could appropriately and profitably be provided to achieve its overall corporate purpose and mission. In that regard, Littauer no doubt made numerous decisions over the years regarding the provision or discontinuance of various services pursuant to criteria nowhere specified in its certificate of incorporation. Al-

though TCH, as Littauer's sole member, would now be vested with such decision-making authority under the restated certificate of incorporation, and although certain guidelines governing such decisions—namely, that the provision or discontinuance of services be in compliance with the foregoing directives—now appear in the restated certificate of incorporation, the basic power at issue remains unaltered. In other words, the decision to delineate in a restated certificate of incorporation a specific or potential restriction upon the services to be provided by the corporation is not the functional equivalent of altering the corporation's underlying purpose or curtailing its power to achieve its overall objectives. Accordingly, we find the position taken by amici curiae to be lacking in merit.

As a final matter, defendant contends that judicial approval of Littauer's restated certificate of incorporation is required pursuant to N-PCL 510 (a) (3) which, in turn, requires that a Type B not-for-profit corporation obtain leave of Supreme Court prior to any "sale, lease, exchange or other disposition" of all, or substantially all, of the assets of the corporation (*see also*, N-PCL 511). Defendant's theory on this point is that the change in membership of Littauer and the corresponding reservation of powers to TCH constitutes an "other disposition" of assets under N-PCL 510 and 511. We cannot agree. Although there indeed will be a change in Littauer's membership if the proposed affiliation is accomplished, defendant has failed to offer any persuasive authority in support of the proposition that a change in the composition of Littauer's membership is the functional equivalent of a sale, lease, exchange or other disposition of corporate assets. Defendant's remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

CARDONA, P. J., CARPINELLO, MUGGLIN and ROSE, JJ., concur.

Ordered that the order is affirmed, without costs.